UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 19-055-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MIKHY FARRERA-BROCHEZ, | ) | **MEMORANDUM ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Farrera-Brochez is currently awaiting a hearing on an alleged violation regarding the conditions of his supervised release. Specifically, he is charged with violating the following requirement: "You must reside in a halfway house for a period of up to 180 days to commence on December 28, 2020, and must observe the rules of that facility." [Record No. 78] Attorney Philip C. Lawson was appointed to represent Farrera-Brochez in these proceedings. Nevertheless, the defendant has now filed a *pro se* motion "for the immediate dismissal of charges related to a probation violation due to lack of evidence." [Record No. 92] As is typical of the defendant's filings, the motion contains a number of fantastical allegations seemingly intended to deflect blame for his own actions. Few of the allegations concern the conduct underlying his alleged violation. The motion will be denied because even the substantive allegations are improperly raised.

Farrera-Brochez's motion begins reasonably enough—he purports to be contesting the weight of the evidence supporting the charges against him. [Record No. 92, p. 1] But things quickly go off the rails. He states that he is facing revocation for violating a federal, state, or

local law, but his alleged violation concerns a condition of supervision imposed by the Court. *See* United States Sentencing Guidelines § 7B1.1(a) (differentiating between violations of law and "other condition[s] of supervision"). Next, he cites the introductory commentary to the policy statements on revocation of supervised release for the proposition that "the purpose of supervision for probation and supervised release should focus on the integration of the violator into the community. . . ." U.S.S.G. § 7A4; [Record No. 92, p. 1] Farrera-Brochez complains that his current confinement is not achieving this purpose. [*See* Record No. 92, p. 1 (detailing various activities he was not permitted to take part in).] However, this is not a substantive allegation, nor would it excuse his non-compliance with the Court's conditions.

Confusingly, Farrera-Brochez then suggests that the threat of COVID-19 infection should have excused the halfway-house condition altogether. [*Id.* at p. 2 (arguing that he should have been allowed "to leave the halfway house")] This allegation comes despite the fact that the condition was imposed well into the COVID-19 pandemic, when the Bureau of Prisons and its partner facilities were taking a myriad of precautions to protect inmates.[1] And, for what it is worth, he later contends that he contracted COVID-19 previously and made a full recovery. [*Id.* at p. 3]

With the prior contentions, Farrera-Brochez was just warming up. He proceeds to argue that the halfway house condition was unjustified because: (1) his case manager at FCI Elkton "repeatedly falsely claimed that [he] wasn't eligible for halfway house"; (2) he should have

---

[1] *See BOP Modified Operations*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 6, 2021) ("This COVID-19 guidance is being shared with private prisons and [Residential Reentry Management Center]s for dissemination to staff and inmates in these facilities, so that similar protocols can be implemented.").

been released to a halfway house "in June or July of 2020"; and (3) he was not released because "the Lee Regime[2] wanted to hold elections and the United States continued to use illegal and underhandeded [sic] dishonest tactics to continue holding [him] illegally." [Record No. 92, p. 2] He also contends that a physician at FCI Schuylkill "threatened to pepperspray [him] to force [him] to sign a sheet of paper agreeing to go into a halfway house." [*Id.*] At the risk of crediting these allegations, the Court will merely note that they do not concern the conduct underlying the defendant's alleged violations.

Farrera-Brochez makes two allegations that are more on point near the end of the motion. He is alleged to have violated the halfway-house condition by refusing to take his medication and perform his assigned work detail. Farrera-Brochez contends that he was "denied" his medications and never assigned a work detail. [Record No. 92, p. 3] Although these are conclusory allegations, they bear on the question of whether a violation actually occurred. *See* 18 U.S.C. §3583(e)(3) (directing that a court may revoke supervision only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release"). However, the allegations are not properly raised for two reasons.

First, this Court has held that "neither the Constitution nor [federal] statute provides criminal defendants a right to simultaneously assert their right to self-representation and their right to counsel." *United States v. Jackson*, No. 6:17-cr-14-GFVT, 2019 WL 3808458, at *1 (E.D. Ky. Apr. 16, 2019). In fact, the undersigned specifically advised the defendant that "there's no hybrid representation in the federal courts." [Record No. 71, p. 3] If he intends to

---

2   A common theme of the defendant's filings is that the Government of Singapore (*i.e.*, "the Lee Regime") has conspired with the United States and the undersigned to persecute him. [*See* Record Nos. 41, pp. 4-5; 51, p. 1; 85 p. 1; 86, p. 2.]

represent himself in these proceedings, he must waive that right "knowingly and intelligently" after being "made aware of the dangers and disadvantages of self-representation." *Faretta v. California*, 422 U.S. 806, 835 (1975) (quotations omitted). Otherwise, he can rely on appointed counsel to raise these issues on his behalf.

Relatedly, Farrera-Brochez's motion puts the cart before the horse. Federal Rule of Criminal Procedure 32.1 governs revocation proceedings in the district courts. A person "in custody for violating a condition of probation or supervised release" is entitled to a preliminary hearing, during which "a magistrate judge must . . . determine whether there is probable cause to believe that a violation occurred." Fed. R. Crim. P. 32.1(b). Here, while the defendant has appeared before United States Magistrate Judge Matthew A. Stinnett, no probable-cause finding has been made.[3] Only after such a finding is made is the matter referred to the undersigned to determine whether a violation occurred pursuant to 18 U.S.C. §3583(e)(3).

Accordingly, it is hereby

**ORDERED** Defendant Farrera-Brochez's motion to dismiss the alleged violations of his conditions of supervised release [Record No. 92] is **DENIED**.

Dated: May 7, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

---

[3] The defendant initially appeared on February 4, 2021. [Record No. 81] Magistrate Judge Stinnett granted defense counsel's motion for a competency hearing before proceeding to make a probable-cause finding. [*Id.*] That evaluation has been completed, and a competency hearing and status conference has been scheduled for May 13, 2021. [Record No. 93]